GRIFFEN v. TECHE TRANSFER CO., INC.

———

(March 7, 1932.   Opinion and Decree.)

———

Henry W. Robinson, of New Orleans, attorney for plaintiff, appellee.

Leslie P. Beard and Chester A. Peyronnin, of New Orleans, attorneys for defendant, appellant.

HIGGINS, J. This is a suit for damages for personal injuries and for property damage to an automobile alleged to have resulted from the negligence of the defendant's employee. Petitioner alleges that he was driving his Studebaker sedan towards Baton Rouge on the graveled public highway along the right bank of the Mississippi river, in the parish of St. Charles, and that his automobile was struck from the rear and overturned by a bus of the defendant company which overtook it in a turn of the road. The charges of negligence against the bus driver are that he failed to keep the bus under proper control in attempting to pass plaintiff's car, in driving too close to plaintiff's car and striking it, and operating the bus at an excessive rate of speed in the curve.

Defendant in its answer denies that there was any collision between the two vehicles and that its employee was in any way at fault, and, in the alternative, pleads contributory negligence.

There was judgment as prayed for, and the defendant has appealed.

The record shows that on November 7, 1930, about 3:15 o'clock p. m., plaintiff was driving his five-passenger Studebaker sedan on the graveled public highway adjacent to the levee of the Mississippi river, in the parish of St. Charles, towards Baton Rouge. His wife was riding on the front seat with him, and he had two guests in the rear seat. The passenger bus of the defendant company was also traveling along the same highway, going in the same direction as the Studebaker car. When the vehicles reached a point in the road where there is an S curve, estimated to be from 35 to 45 degrees at both turns thereof, the bus overtook the Studebaker car. The driver of the bus sounded his horn as a signal that he intended to pass the automobile, and the plaintiff pulled to the extreme right-hand side of the road in order to let the bus pass to his left. The road at this point is about 23 to 25 feet in width, the gravel in the center being well packed, but on each side there is some loose gravel. It appears that the two machines were leaving the last turn in the S curve when the Studebaker car ran off the road on the right, or levee side, and turned over on its left side, causing the damages to the car and injuries to the plaintiff. All of the other occupants of the car were injured by being bruised or cut from flying glass. The bus continued on its course and stopped about 150 feet ahead, after its driver's attention had been called, by one of the passengers, to the fact that the automobile had turned over.

The plaintiff, the two guests in his automobile, his wife, and also a passenger in the bus, all testified that, as the bus passed the Studebaker car, there was a noise and a jolt as if the right rear part of the bus had struck the left rear side of the Studebaker car, and that immediately thereafter the plaintiff, who was driving the Studebaker car, lost control of it, running off the right-hand side of the road and turning over.

The driver of the bus and several passengers therein all testified that they felt no jolt and heard no noise at the time the bus passed the Studebaker; that the road was wide enough for the bus to pass the

sedan, and that the front part of it (the bus), at the time it went around the sedan, had about a four foot clearance. The defendant's witnesses admit that the rear bumper of the bus was made of a large iron pipe, two and a half or three inches in diameter, and protruded four to six inches beyond the body of the truck.

The photograph of the left rear side of the Studebaker car shows plainly that it was struck a blow on the rear of the license plate and left rear fender which were about the same distance above the ground as the bumper on the rear of the bus. The marks on the license plate and fender show that the blow was administered by an object moving in the same direction as the Studebaker sedan was going.

As we view the situation, all of the testimony introduced in behalf of the plaintiff is positive evidence that the right rear side of the bus struck the left rear side of the Studebaker car, causing the driver to lose control of it, which resulted in its turning over.

All of the testimony in behalf of the defendant is negative evidence to the effect that the several passengers in the bus did not feel any jolt or jar, nor hear any sound at the time the bus passed the Studebaker car. This might well be, as the bus was so much larger and heavier than the sedan, and because the windows on the right side of the bus were up at the time of the collision. We conclude that the bus did strike the sedan.

Now all of the evidence for both sides shows that the bus was traveling at a speed of 40 or 45 miles an hour, and that the sedan was going at a speed of about 35 or 40 miles an hour prior to entering the curve; that the sedan slowed down as it approached the curve, and, upon the signal from the bus driver, pulled to the extreme right-hand side of the road in order to permit the bus to pass; that the driver of the bus attempted to pass the sedan while both vehicles were moving through the S curve; that the bus was going about 25 miles an hour at the time and the Studebaker about 15 miles an hour; and that the bus driver's view was obstructed for a considerable distance by the curve in the road and a fence and certain trees along the road.

The Louisiana statute regulating traffic on state highways is Act No. 296 of 1928, and the relevant portions thereof read as follows:

"Section 5. (Restrictions of Speed.)

"(a) Any person driving a vehicle on a highway shall drive the same at a careful and prudent speed not greater than is reasonable and proper, having due regard to the traffic, surface and width of the highway and of any other conditions then existing, and no person shall drive any vehicle upon a highway at such speed as to endanger the life, limb or property of any person.

"(b) Subject to the provision (a) of this section and except in those instances where a lower speed is specified in this Act, it shall be prima facie lawful for the driver of a vehicle to drive at a speed not exceeding the following, but in any case when such speed would be unsafe it shall not be lawful. * * *

"4. Fifteen miles an hour in traversing or going around curves or traversing a grade upon a highway when the driver's view is obstructed within a distance of one hundred feet along such highway in the direction in which he is proceeding."

"Section 14. (Overtaking a Vehicle.)

"(a) The driver of any vehicle overtaking another vehicle proceeding in the same direction shall pass at a safe distance to the left thereof, and shall not again drive to the right side of the highway until safely clear of such overtaken vehicle."

"Section 15. * * *

"(b) The driver of a vehicle shall not overtake and pass another vehicle proceeding in the same direction upon the crest of a grade or upon a curve in the highway where the driver's view along the highway is obstructed within a distance of five hundred (500) feet."

We have reached the conclusion that the driver of the bus was at fault in attempting to pass the Studebaker car in the curve while running at an excessive rate of speed, and in passing too close to the sedan and striking it.

The plea of contributory negligence is without merit, as all the evidence shows that the plaintiff was on the extreme right-hand side of the road at the time of the accident and going at a moderate and lawful rate of speed.

The defendant admits the correctness of the bill itemizing the damages to the automobile in the sum of $196, plus $3.90 for towing the disabled car into the town of Luling, but denies the claim of $100 covering damages for personal injuries to plaintiff. Plaintiff alleges that he sustained "two severe bruises on the leg and one on the collar-bone, which were extremely painful." J. S. Goff, district manager of the United States Foreign and Domestic Commerce, one of the plaintiff's witnesses, testified that the plaintiff was hurt in the accident, complaining at the time of pain in his shoulder and leg. Walter T. Schrieber, a research chemist, guest in the plaintiff's car, testified that, at the time of the accident, Mr. Griffen, plaintiff, limped considerably from an apparently injured leg. The injuries, while painful, were not serious, and the trial court allowed the sum of $100. We see no reason to disturb the award.

For the reasons assigned, the judgment is affirmed.